UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

ALEX VOLINSKY, on behalf of himself
and all others similarly situated,

     Plaintiff,

v.                       Case No: 8:23-cv-00250-KKM-NHA

LENOVO (UNITED STATES) INC.,

     Defendant.

_____

## ORDER

In 2019, Alex Volinsky bought a Lenovo 14w laptop from the company's website. Today, he seeks to represent two consumer classes—one from Florida and one from a seemingly random collection of other southern states—in an action claiming that Lenovo committed a host of statutory violations and common law torts arising out of the 14w's alleged "defective hinge mechanism." *See generally* Am. Compl. (Doc. 17); *id.* ¶ 4.

Lenovo moves to dismiss the amended complaint under Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6). MTD (Doc. 19). Because I largely agree with Lenovo that Volinsky lacks Article III standing to assert some claims in the amended complaint and fails to state a claim with respect to the others, I grant the motion in part.

## I.   BACKGROUND

The 14w is a convertible laptop. Am. Compl. ¶ 5. In layman's terms, that means the laptop has hinges that allow a user to open it 180 degrees. *See id.* As is common in modern e-commerce, Lenovo's website contains information about the technical specifications and features of its products, including the 14w. The amended complaint reproduces four groups of such statements. *See id.* ¶¶ 2, 4, 6.

- First, under the header "[b]ecause things happen": "With military-grade durability, the 14w can more than handle the bumps and knocks of everyday life. Its full-sized keyboard and mechanically anchored keys are spill resistant up to 1.39 cups / 330 ml." *Id.* ¶ 2.

- Second, under the heading "[d]urability," *id.*, Lenovo provides four bullet points on the 14w's specifications:
  - "Meets military-specification testing"
  - "Reinforced ports & hinges"
  - "Drop-resistant up to 29.5" / 75cm"
  - "Spill-resistant keyboard (with mechanically anchored keys)"

- Third, under the heading "[l]eave the power cord at home": "On a single charge, the 14w can run for up to 10 hours*. That should be more than enough for your daily commute, and for you to get everything done at school or work once you're there." *Id.* ¶ 4.

- Fourth, under the heading "[e]asy on the eyes": "Behind the stamped aluminum shell cover, the 14" FHD display boasts a 6 mm narrow bezel, plus IPS and antiglare technology. The result is a larger, more vibrant screen with wide-angle viewing that's less of a strain on your eyes. There's also a touchscreen option for faster, more intuitive interaction." *Id.* ¶ 6.

Although Volinsky does not point to any statement to this effect, he claims that Lenovo "tells consumers [the 14w] will function reliably and be free of flaws, damage, and

structural deficiencies for many years, subject to normal and intended use." *Id.* ¶ 3; *see also id.* ¶ 7 (claiming that Lenovo "market[ed] [the 14w] as capable of functioning reliably and remaining in proper working condition for years to come"); *id.* ¶¶ 61, 75, 84, 87–89, 106, 110, 114–116, 118, 121 (similar phrasing littered throughout the amended complaint's substantive counts).

The gist of Volinsky's suit is that the 14w (and especially its hinges) did not live up to Lenovo's billing. He claims that the hinge mechanism "was made of low-quality [and] low-strength materials, which caused the hinges to break and/or detach." *Id.* ¶ 8; *see also id.* ¶ 14 (alleging that "the glue and plastic support components that contain the metal hinges and mounting hardware are too weak to withstand normal use, frequent opening-and-closing, and switching between sitting upright and laying open flat."). This design, Volinsky says, "caused (1) the two halves of the [14w], the top panel and the base panel, to loosen and/or disconnect from each other," "and/or (2) the screen to separate from the top panel housing, which exposed the inside of the top panel, made the [14w] incapable of being closed properly, and affected the function and capabilities of the device." *Id.* ¶ 9; *see also id.* ¶ 16 (alleging that Volinsky's laptop suffered from hinge problems and attaching several images). Volinsky alleges that the problem with his device is just one example of a common issue with the 14w product line and that some consumers have complained online. *Id.* ¶¶ 10–15, 18–20.

3

Volinsky claims to have relied on the above statements by Lenovo when purchasing the 14w from the manufacturer's website at its advertised price. *Id.* ¶¶ 41–44. If he had been aware of the hinge problem, he says, he would have either paid less or made a different purchase. *Id.* ¶ 45. Going forward, Volinsky alleges that he intends to buy from Lenovo again, at least once "he can do so with the assurance the Product's representations are consistent with its abilities, attributes, and/or composition." *Id.* ¶ 48.

## II.    LEGAL STANDARDS

### A. Rule 12(b)(1)

"Article III of the Constitution limits federal courts to deciding 'Cases' and 'Controversies.'" *Drazen v. Pinto*, 74 F.4th 1336, 1342 (11th Cir. 2023) (en banc) (quoting U.S. Const. art III, § 2). "[S]tanding is one of several doctrines that reflect this fundamental limitation." *Id.* (quoting *Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009)). Article III standing has three elements: injury in fact, traceability, and redressability. *See id.*

A defendant may raise standing objections at the pleading stage by moving to dismiss for lack of subject-matter jurisdiction under Rule 12(b)(1). *See* Fed. R. Civ. P. 12(b)(1). There are two kinds of Rule 12(b)(1) attacks. Facial attacks "challenge[] whether a plaintiff 'has sufficiently alleged a basis of subject matter jurisdiction, and the allegations in his complaint are taken as true for the purposes of the motion.'" *Kennedy v. Floridian*

*Hotel, Inc.*, 998 F.3d 1221, 1230 (11th Cir. 2021) (quotations omitted). In contrast, factual attacks "challenge[] the existence of subject matter jurisdiction irrespective of the pleadings, and extrinsic evidence may be considered." *Id.* "A district court evaluating a factual attack on subject matter jurisdiction . . . is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." *Id.* (quotations omitted).

### B. Rule 12(b)(6)

Federal Rule of Civil Procedure 8(a)(2) requires "a short and plain statement of the claim showing that the pleader is entitled to relief." This pleading standard "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' " *Id.* (quoting *Twombly*, 550 U.S. at 555). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.' " *Id.* (quoting *Twombly*, 550 U.S. at 557).

"To survive a motion to dismiss" for failure to state a claim, a plaintiff must plead sufficient facts to state a claim that is "plausible on its face." *Id.* (quoting *Twombly*, 550 U.S. at 570). A claim is plausible on its face when a "plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the

misconduct alleged." *Id.* When considering the motion, courts accept the complaint's factual allegations as true and construe them in the light most favorable to the plaintiff. *Pielage v. McConnell*, 516 F.3d 1282, 1284 (11th Cir. 2008). Courts should limit their "consideration to the well-pleaded factual allegations, documents central to or referenced in the complaint, and matters judicially noticed." *La Grasta v. First Union Sec., Inc.*, 358 F.3d 840, 845 (11th Cir. 2004), *abrogated on other grounds by Twombly*, 550 U.S. 544.

### C. Rule 9(b)

Federal Rule of Civil Procedure 9 provides that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." FED. R. CIV. P. 9(b). To satisfy Rule 9(b), a complaint must include "(1) precisely what statements were made in what documents . . . or what omissions were made; (2) the time and place of each such statement and the person responsible for making (or, in the case of omissions, not making) each statement; (3) the content of such statements and the manner in which they misled the plaintiff; and (4) what the defendants obtained as a consequence of the fraud." *Crawford's Auto Ctr., Inc. v. State Farm Mut. Auto. Ins. Co.*, 945 F.3d 1150, 1159 (11th Cir. 2019) (quotations omitted).

### III.   ANALYSIS

Lenovo moves to dismiss each of the amended complaint's seven counts. I address each count in turn, dividing the arguments based on whether they attack the Court's

subject-matter jurisdiction under Rule 12(b)(1) or challenge the amended complaint's sufficiency under Rule 12(b)(6) and Rule 9(b).

## A. Jurisdictional Arguments

Lenovo raises two jurisdictional arguments. First, it argues that Volinsky lacks standing to assert the proposed multistate class's claims under other states' consumer fraud statutes in Count II. Second, it contends that Volinsky lacks standing to seek injunctive relief as a remedy for any claims, Florida law or otherwise. I agree with Lenovo on both points.

### 1. Volinsky Lacks Article III Standing to Assert the Multistate Claims in Count II

Along with a Florida class, Volinsky seeks to represent a "Consumer Fraud Multi-State Class" asserting Alabama, Kentucky, Louisiana, Mississippi, and Tennessee class members' claims under those states' consumer fraud statutes. Am. Compl. ¶¶ 50, 69–72. Lenovo argues that Volinsky cannot pursue consumer fraud claims under the laws of other states when he alleges only that he was injured in Florida. MTD at 12–14. Thus, Lenovo says, no named plaintiff has standing to bring such claims and Count II must be dismissed. *Id.* I agree.

Although this case has not yet proceeded to a motion for class certification, I begin with "the basic principle that at the class certification stage only the named plaintiffs need have standing." *Green-Cooper v. Brink Int'l, Inc.*, 73 F.4th 883, 888 (11th Cir. 2023)

(footnote omitted); *see also In re Equifax Inc. Customer Data Sec. Breach Litig.* (*Equifax Data Breach Litig.*), 999 F.3d 1247, 1261 (11th Cir. 2021) ("[O]nly one named plaintiff must have standing as to any particular claim in order for it to advance."). Because Volinsky is the only named plaintiff, his standing (or lack thereof) to pursue the multistate claims in Count II is all that matters, both now and on review of any eventual motion for class certification.

Volinsky is a Florida resident living in Pinellas County. *See* Am. Compl. ¶¶ 30, 36. He does not allege that his injury—purchasing an allegedly faulty 14w laptop from Lenovo's website sometime in 2019—occurred anywhere other than Florida. *See generally id.* In other words, there is no connection between Volinsky's injury and the consumer fraud statutes of any other state. *See, e.g., Inouye v. Adidas Am., Inc.*, No. 8:22-cv-416, 2023 WL 2351654, at *5–6 (M.D. Fla. Mar. 3, 2023). Because Volinsky has suffered no injury under the laws of states other than Florida, he lacks Article III standing to assert claims under other states' laws, either on his own behalf or as the lone named plaintiff in a proposed multistate class. *See Green-Cooper*, 73 F.4th at 888; *Equifax Data Breach Litig.*, 999 F.3d at 1261. Volinsky argues that I need not decide standing until class certification. *See* Resp. (Doc. 26) at 6–7. But jurisdictional questions cannot wait, and Volinsky has done nothing to suggest he will be able to assert the proposed multistate claims at the class certification stage either.

In sum, "standing is not dispensed in gross; rather, *plaintiffs must demonstrate standing for each claim that they press.*" *TransUnion LLC v. Ramirez*, 594 U.S. 413, 431 (2021) (emphases added). Because Volinsky cannot transform his Florida injury into one of another state, he lacks standing to assert the multistate claims alleged in Count II, either individually or as a class representative. *See Green-Cooper*, 73 F.4th at 888; *Equifax Data Breach Litig.*, 999 F.3d at 1261.

### 2.  Volinsky Lacks Standing to Seek Injunctive Relief

The amended complaint "seeks class-wide injunctive relief because [Lenovo's allegedly unlawful marketing] practices continue." Am. Compl. ¶ 57; *see also id.* ¶¶ 68, 82; *id.* at 26. Lenovo argues that Volinsky lacks standing to assert injunctive relief, MTD at 18–19, and Volinsky agrees to drop the matter. *See* Resp. (Doc. 26) at 7 n.1 ("respectfully withdraw[ing] [Volinsky's] request for injunctive relief").

Volinsky lacks standing to seek injunctive relief. "[A] person exposed to a risk of future harm may pursue forward-looking, injunctive relief to prevent the harm from occurring, at least so long as the risk of harm is sufficiently imminent and substantial." *TransUnion*, 594 U.S. at 435. Volinsky's alleged injury is far from "certainly impending." *See Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 402 (2013) (quotations omitted). It beggars belief—knowing what he claims to about the 14w's alleged deficiencies—that Volinsky is in immediate danger of purchasing another laptop of the same model from the

same manufacturer. The amended complaint's boilerplate assertion that Volinsky "intends to, seeks to, and will purchase the [14w] again when he can do so with the assurance [that Lenovo's] representations are consistent with the [14w's] abilities, attributes, and/or composition," Am. Compl. ¶ 48, cannot show a "certainly impending" injury both under the circumstances alleged in the complaint and as a matter of simple common sense, *Clapper*, 568 U.S. at 402; *see also* MTD at 19 (collecting cases in which Volinsky's counsel has unsuccessfully argued that past purchasers have standing to seek injunctive relief based on future purchases of the same product). The argument is especially ill-suited to this past-purchaser suit, as a laptop is not the kind of consumer good typically subject to regular repeat purchases.

As with the multistate claims, because Volinsky lacks standing to seek injunctive relief and is the only named plaintiff, there is no standing for the putative classes to seek such relief either. *See Green-Cooper*, 73 F.4th at 888; *Equifax Data Breach Litig.*, 999 F.3d at 1261.

## B. Non-Jurisdictional Arguments

### 1. Count I: Florida Deceptive and Unfair Trade Practices Act (the FDUTPA)

"The elements comprising a consumer claim for damages under [the] FDUTPA are: (1) a deceptive act or unfair practice; (2) causation; and (3) actual damages." *Carriuolo v. Gen. Motors Co.*, 823 F.3d 977, 983 (11th Cir. 2016). A deceptive act is a

"representation, omission, or practice that is likely to mislead [a] consumer acting reasonably in the circumstances." *Alhassid v. Nationstar Mortg. LLC*, 771 F. App'x 965, 969 (11th Cir. 2019) (per curiam) (quotations omitted). "An objective test is used to determine whether an act is deceptive under [the] FDUTPA, and the plaintiff must show that the alleged practice was likely to deceive a consumer acting reasonably in the same circumstances." *Marrache v. Bacardi U.S.A., Inc.*, 17 F.4th 1084, 1098 (11th Cir. 2021) (quotations omitted).

Lenovo argues that "Volinsky cannot specifically identify any Lenovo advertising amounting to a promise the hinges on every laptop would last forever regardless of how someone used it, his claims instead are based on subjective and unreasonable cherry-picking of words in advertising, taken out of context." MTD at 9. The basic idea is that Volinsky has failed to plausibly plead a deceptive act or unfair practice based on the statements alleged in the amended complaint. Volinsky responds that he has at least identified some related marketing materials, that Lenovo's argument presents a fact question for the jury, and that anonymous internet commenters also complained about the 14w's hinges. Resp. at 3–5. On balance, I agree with Lenovo.

The amended complaint reproduces four groups of statements allegedly made by Lenovo. *See supra* § I. Construing them all in the light most favorable to Volinsky, only three of the alleged statements plausibly have anything to do with the 14w's hinges. First,

11

under the "[b]ecause things happen" heading, Lenovo stated that "[w]ith military-grade durability, the 14w can more than handle the bumps and knocks of everyday life." Am. Compl. ¶ 2. Second, under the "[d]urability" heading, two of the bullet points state that the 14w "[m]eets military-specification testing" and possesses "[r]einforced ports [and] hinges." *Id.*

Reading these three statements for all they are worth, they do not add up to Volinsky's conclusory reformulations: "tell[ing] consumers [the 14w] will function reliably and be free of flaws, damage, and structural deficiencies for many years, subject to normal and intended use," Am. Compl. ¶ 3, or "marketing [the 14w] as capable of functioning reliably and remaining in proper working condition for years to come," *id.* ¶ 7. Volinsky does not allege that Lenovo made these broader statements; he simply concludes that they are logical inferences from the limited statements Lenovo did make. But an objectively reasonable consumer presented with the factual allegations in the amended complaint could not infer Volinsky's sweeping interpretation from one vague sentence and two bullet points. This is especially so because Volinsky does not challenge any of the alleged statements' factual accuracy. He does not, for example, allege that the 14w did not in fact possess "[r]einforced ports [and] hinges" or that it did not actually meet the "military-specification testing" that Lenovo represented it did.[1]

---

[1] To the degree Volinsky seeks to state a FDUTPA claim based on an allegedly fraudulent omission, that claim is subject to Rule 9(b)'s enhanced pleading requirement. *See DJ Lincoln Enters. v. Google LLC*, No.

Neither Volinsky's subjective understanding of Lenovo's marketing statements, nor the fact that a handful of anonymous complaints agree, mean that a reasonable consumer would interpret Lenovo's limited statements about durability to include a sweeping perpetual guarantee. *See Cummings v. Blue Diamond Growers*, No. 1:22-cv-141, 2023 WL 3487005, at *3 (N.D. Fla. May 15, 2023) ("It is not enough to allege that [a FDUTPA plaintiff] or some others may *subjectively* feel deceived."). Indeed, no reasonable consumer reading Lenovo's statements, even construed in Volinsky's favor, would conclude that Lenovo had promised that the 14w (or any given part) would never degrade so long as it was used as intended.[2] Because Volinsky has failed to plead a deceptive act or unfair practice, Count I fails. *Carriuolo*, 823 F.3d at 983; *Alhassid*, 771 F. App'x at 969; *see also Cummings*, 2023 WL 3487005, at *3–4 (dismissing similar FDUTPA claim brought by

---

21-12894, 2022 WL 203365, at *3 (11th Cir. Jan. 24, 2022) (per curiam) (applying Rule 9(b) to a FDUTPA claim alleging fraud). Because Volinsky does not plead "(1) precisely . . . what omissions were made; (2) the time and place of each such [omission] and the person responsible for . . . not making each statement; [and] (3) the content of such [omissions] and the manner in which they misled [him]," any omission-based claim fails to satisfy Rule 9(b). *Crawford's Auto Ctr., Inc.*, 945 F.3d at 1159 (cleaned up). And even if Volinsky satisfied Rule 9(b) by inverting his broad reconstructed statement into an omission, Lenovo's failure to deny that statement would not be objectively deceptive to a reasonable consumer under the circumstances alleged in the amended complaint. *Cf. Marrache*, 17 F.4th at 1098.

[2] A narrower version of Volinsky's reformulated statement might satisfy the reasonable consumer standard under different circumstances (for example, if given the same statements, the hinges on every 14w fell off two days after purchase). But Volinsky does not allege how long it took his hinges to degrade, instead relying on the idea that they degraded with regular use over some indeterminate time shorter than "many years." *See, e.g.*, Am. Compl. ¶¶ 3, 61–62. As pleaded, the amended complaint does not allege an objectively deceptive act.

Volinsky's counsel against an almond seller because the plaintiff failed to plead an objectively deceptive act).

## 2. Count III: False and Misleading Advertising

Florida's misleading advertising statute provides that "[i]t shall be unlawful for any person to make or disseminate or cause to be made or disseminated before the general public . . . any misleading advertisement." § 817.41(1), FLA. STAT. "Such making or dissemination of misleading advertising shall constitute and is hereby declared to be fraudulent and unlawful, designed and intended for obtaining money or property under false pretenses." *Id.* A misleading advertisement is "any statement[] made, or disseminated, in oral, written, electronic, or printed form or otherwise, to or before the public, or any portion thereof, which are known, or through the exercise of reasonable care or investigation could or might have been ascertained, to be untrue or misleading" and that is "made or disseminated with the intent or purpose, either directly or indirectly, of selling or disposing of real or personal property." *Id.* § 817.40(5). It is enough to state a claim under § 817.41 that a plaintiff "points to specific marketing statements he says were false and misleading, noting that [the marketer] could not and did not have a factual basis for making those statements." *Godelia v. Doe 1*, 881 F.3d 1309, 1321 (11th Cir. 2018).

Because claims under § 817.41 are founded in common law fraud-in-the-inducement, Rule 9(b)'s heightened pleading standards govern. *Cf. Smith v. Mellon Bank*,

957 F.2d 856, 858 (11th Cir. 1992) ("In order to prove a violation of Section 817.41, Florida law requires the plaintiff to prove reliance on the alleged misleading advertising, as well as each of the other elements of the common law tort of fraud in the inducement."); *see also e.g.*, *Era Organics, Inc. v. Erbaviva, LLC*, No. 8:18-cv-2219, 2019 WL 13063471, at *1 (M.D. Fla. Mar. 8, 2019) (applying Rule 9(b) to a counterclaim alleging the violation of § 817.41).

Count III violates Rule 9(b). Rather than plead with particularity the exact misleading statements that the claim relies on, Volinsky asserts only that Lenovo "made numerous misrepresentations of material fact, that the [14w] would function reliably and be free of flaws, damage, and structural deficiencies for many years, subject to normal and intended use, through its advertisements and marketing, through various forms of media, product descriptions distributed to resellers, and targeted digital advertising." Am. Compl. ¶ 75.[3] Which forms of media, which targeted advertising, and which product descriptions distributed to resellers? And what misrepresentations did any of them contain, precisely? The purpose of Rule 9(b) is to "alert[] defendants to the precise misconduct with which they are charged and protect[] defendants against spurious charges of immoral and

---

[3] Volinksy does not even try to comply with Rule 9(b) with respect to Count III. *See* Am. Compl. ¶¶ 73–82. And he does not incorporate the Rule 9(b) allegations that accompany Count VI, his fraud claim. *See id.* ¶¶ 105–22. But even if he had, those allegations are insufficient. *See, e.g., id.* ¶ 115 (failing to identify any particular time when the alleged statements or omissions were made and instead alleging that they were made "continuously throughout the applicable Class period(s)"); *Crawford's Auto Ctr., Inc.*, 945 F.3d at 1159 (requiring more).

fraudulent behavior" by requiring plaintiffs to plead with particularity. *Ziemba v. Cascade Int'l*, 256 F.3d 1194, 1202 (11th Cir. 2001) (quotations omitted).

In the alternative, Count III fails for a similar reason to Count I: Volinsky's conclusory reformulated statements are not what any reasonable person would understand Lenovo to have said based on the actual statements reproduced in the amended complaint. And Volinsky does not allege that any of the statements Lenovo made were false or misleading on their face.

### 3.  Count IV: Breach of Express and Implied Warranties

Count IV alleges that Lenovo breached an express warranty that the 14w "would be defect-free" and "would function reliably and be free of flaws, damage, and structural deficiencies for many years, subject to normal and intended use." Am. Compl. ¶¶ 87–88. It then makes a similar claim framed as the breach of an implied warranty of merchantability or fitness for a particular purpose. *See id.* ¶¶ 96–97. Finally, and although the amended complaint does not address the third claim in any substantive paragraph, Volinsky tacks on a violation of the Magnuson Moss Warranty Act, 15 U.S.C. §§ 2301, et seq.

Rather than reach the merits, I address a threshold problem with Count IV: it impermissibly combines three theories of warranty liability into a single count in violation of the Federal Rules of Civil Procedure. *See* FED. R. CIV. P. 10(b); *Weiland v. Palm Beach*

*Cnty. Sheriff's Off.*, 792 F.3d 1313, 1322–23 (11th Cir. 2015) (explaining that one "type of shotgun pleading is [a complaint] that commits the sin of not separating into a different count each cause of action or claim for relief"). Thus, Count IV is dismissed without prejudice as an impermissible shotgun pleading. Volinsky is granted leave to amend solely to separate the three distinct claims contained in Count IV into separate counts.

### 4. Count V: Negligent Misrepresentation

A plaintiff must show four elements to prove negligent misrepresentation under Florida law: "(1) there was a misrepresentation of material fact; (2) the representer either knew of the misrepresentation, made the misrepresentation without knowledge of its truth or falsity, or should have known the representation was false; (3) the representer intended to induce another to act on the misrepresentation; and (4) injury resulted to a party acting in justifiable reliance upon the misrepresentation." *Osorio v. State Farm Bank, F.S.B.*, 746 F.3d 1242, 1259 (11th Cir. 2014) (quoting *Tiara Condo. Ass'n, Inc. v. Marsh & McLennan Cos.*, 607 F.3d 742, 747 (11th Cir. 2010), *certified question answered*, 110 So. 3d 399 (Fla. 2013)). Again, Rule 9(b)'s heightened pleading standards apply. *See Lamm v. State St. Bank & Tr.*, 749 F.3d 938, 951 (11th Cir. 2014).

Lenovo argues that Count V should be dismissed because Volinsky does not comply with Rule 9(b). MTD at 16–17. For substantially the same reasons as I discussed with respect to Count III, I agree. *See, e.g.*, Am. Compl. ¶¶ 101 (alleging that Lenovo's

17

"representations and omissions went beyond the specific representations made in marketing, and incorporated the extra-labeling promises and commitments to quality, transparency and putting customers first, that it has been known for" without alleging the precise details of such "extra-labeling promises and commitments").[4] Count V fails.

### 5. Count VI: Fraud

To prove common law fraud under Florida law, a plaintiff must show "(1) a false statement concerning a material fact; (2) the representor's knowledge that the representation is false; (3) an intention that the representation induce another to act on it; and (4) consequent injury by the party acting in reliance on the representation." *Butler v. Yusem*, 44 So. 3d 102, 105 (Fla. 2010). Rule 9(b), of course, applies.

Although Count VI is the lone claim in the amended complaint that even tries to comply with Rule 9(b)'s particularity requirement, for the reasons I have discussed above, that effort fails. Volinsky alleges a particular omission, although a somewhat odd one: that Lenovo "omitted . . . that the [14w] does not function reliably or remain free of flaws, damage, or structural deficiencies for many years, even when subject to normal and intended use." Am. Compl. ¶ 112. But rather than allege the particular time and place that this omission occurred, Volinsky merely claims that Lenovo acted "continuously throughout the applicable Class period(s)." *Id.* ¶ 115. And although Count VI alleges that

---

[4] *See also supra* n. 3.

Lenovo "made written and visual misrepresentations in the advertising and marketing of the [14w], that it would function reliably and be free of flaws, damage, and structural deficiencies for many years, subject to normal and intended use," and that Volinsky read and relied on those misrepresentations, *id.* ¶¶ 118, 120, it is far from clear when and where exactly those affirmative misstatements occurred.

In response to the motion to dismiss, Volinsky argues that he satisfied the "where" and "when" requirements of Rule 9(b) by alleging that he bought the laptop from Lenovo's website in 2019. Resp. at 12 (citing Am. Compl. ¶ 40 (Volinsky "purchased the [14w] on one or more occasions within the statutes of limitations for each cause of action alleged, from lenovo.com, in 2019.")). The cited paragraph, though, refers only to the time and place of purchase—it says nothing about where or when Volinsky viewed any alleged misrepresentations. And even if that allegation stood for what Volinsky has reformulated it to say, the mere suggestion that a fraudulent misrepresentation occurred somewhere on Lenovo's website at some indeterminate time in the year 2019 does not satisfy Rule 9(b) either. Count VI fails.

### 6. Count VII: Unjust Enrichment

Finally, a claim for unjust enrichment in Florida "has three elements: (1) the plaintiff has conferred a benefit on the defendant; (2) the defendant voluntarily accepted and retained that benefit; and (3) the circumstances are such that it would be inequitable for

the defendants to retain it without paying the value thereof." *Marrache*, 17 F.4th at 1101 (quotations omitted). Lenovo argues that Count VII fails because it is tied to the merits of Volinsky's FDUTPA claim and because the count fails to satisfy basic notice pleading standards. MTD at 17–18. Because I agree with Lenovo as to the second point, I need not discuss the first.

The entirety of Count VII's independent allegations is contained in the following sentence: "Defendant obtained benefits and monies because the [14w] was not as represented and expected, to the detriment and impoverishment of Plaintiff and class members, who seek restitution and disgorgement of inequitably obtained profits." Am. Compl. ¶ 124. Although Volinsky incorporates the facts section of his amended complaint, *see id.* ¶ 123, he makes no effort to link those facts to the elements of unjust enrichment so as to "allow[] the court to draw the reasonable inference that [Lenovo] is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Count VII is exactly the kind of "unadorned, the-defendant-unlawfully-harmed-me accusation" that Rule 8 does not permit. *Id.* Other district courts in this circuit agree. *See Valiente v. Unilever U.S.*, No. 22-21507-CIV, 2022 WL 18587887, at *22 (S.D. Fla. Dec. 8, 2022) (dismissing an identically worded unjust enrichment count filed by Volinsky's counsel based on pleading failure). Just like the unjust enrichment count in *Valiente*, Count VII "contains *only* naked assertions devoid of further factual enhancement." *Id.* Count VII fails.

20

IV.   **CONCLUSION**

Accordingly, it is **ORDERED**:

1.   Count II and Volinsky's claims for injunctive relief are **DISMISSED without prejudice** for lack of Article III standing.

2.   Counts I, III, V, VI, and VII are **DISMISSED without prejudice** for failure to state a claim.

3.   Count IV is **DISMISSED without prejudice** as an impermissible shotgun pleading and the Court sua sponte grants Volinsky leave to amend Count IV to properly separate the three warranty claims contained within into separate counts. Any amendment must be filed no later than **April 10, 2024**.

**ORDERED** in Tampa, Florida, on March 27, 2024.

Kathryn Kimball Mizelle
United States District Judge